**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JAMES FONDREN BROWN,**
     **Petitioner,**

**v.**                         **Case No.  3:05cv437/LAC/MD**

**JAMES R. MCDONOUGH,**
     **Respondent.**

_____

## REPORT AND RECOMMENDATION

     **Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 9).  Respondent filed an amended answer (doc. 33), submitting relevant portions of the state court record (doc. 18, Attach.). Petitioner has filed a reply and two supplements thereto (Docs. 23, 24 and 37, respectively).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY

     **On June 12, 2001, in the Circuit Court of Escambia County, Florida, case number 99-383, petitioner was convicted upon jury verdict of trafficking in cocaine**

(400 grams or more, but less than 150 kilograms) or a mixture containing that amount of cocaine, in violation of Fla. Stat. § 893.135(1)(b)1.c; and of conspiracy to traffic in cocaine (400 g. to 150 kg.) or a mixture containing that amount of cocaine, in violation of Fla. Stat. § 893.135(5).  (Doc. 18, Ex. C, p. 565; Ex. D).[1]  The alleged co-conspirators were Jason Paul Smith and/or Eric Shane Reese and/or Isaac Christian Kimsey.  (Ex. A).  Petitioner was sentenced to concurrent terms of fifteen years imprisonment on each count, which was the minimum mandatory.  (Ex. C, pp. 569-70; Ex. D).  Petitioner appealed, raising two claims of trial court error.  (Ex. E).[2]  The Florida First District Court of Appeal ("First DCA") affirmed petitioner's convictions and sentences without written opinion on March 7, 2002.  *Brown v. State*, 812 So.2d 405 (Fla. Dist. Ct. App. 2002) (Table) (copy at Ex. H).

On February 28, 2003 petitioner, represented by counsel, filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850, in which he claimed he received ineffective assistance of counsel due to trial counsel's failure to:  (1) file a motion to suppress petitioner's confession; (2) file a motion *in limine* to exclude the cocaine "press," and advising petitioner to disavow any knowledge of the press, "causing the Defendant to perjure himself" on the witness stand; (3) object to the introduction of evidence founded on the pen registers, and advising petitioner to testify at trial that he made a "couple" calls to Kimsey asking to purchase cocaine; (4) object to the admission of the electronic scales; (5) move for judgment of acquittal based on insufficiency of evidence; and (6) solicit impeachment evidence from Investigator Forte regarding the unreliability of State's witness Eric Reese.  (Ex. J).  In addition, petitioner claimed that the "cumulative effect" of counsel's "errors and deficiencies" deprived him of his right to effective assistance of counsel.  (*Id.*).  After holding a limited evidentiary hearing, the trial

---

[1]Hereafter all references to exhibits will be to those attached to Doc. 18 unless otherwise noted.

[2]Petitioner claimed that the trial court committed reversible error by: (1) admitting evidence of drug transactions between, and records of, three individuals who were not named defendants, and (2) failing to determine the voluntariness of petitioner's alleged confession despite the fact that petitioner failed to file a motion to suppress, failed to object at trial, and failed to file a motion for new trial to contest the voluntariness of the statement.  (Ex. E)

court denied relief.  (Ex. P).  The First DCA affirmed the denial order without written opinion on June 8, 2005.  *Brown v. State*, 907 So.2d 520 (Fla. Dist. Ct. App. 2005) (Table) (copy at Ex. S).  Petitioner's motion for rehearing was denied on July 27, 2005.  (Ex. T).

On March 5, 2004 petitioner filed a petition for writ of habeas corpus in the First DCA, raising two grounds of ineffective assistance of appellate counsel.  (Ex. U).  The First DCA denied the petition on April 13, 2004, citing *Harris v. State*, 580 So.2d 243 (Fla. Dist. Ct. App. 1991).  *Brown v. State*, 872 So.2d 956 (Fla. Dist. Ct. App. 2004) (copy at Ex. V).  Petitioner's motion for rehearing was denied on May 26, 2004.  (Ex. W).

Petitioner initiated this federal habeas proceeding on November 14, 2005.  (Doc. 1).  He filed an amended petition on January 11, 2006.  (Doc. 9).

## DISCUSSION

### Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the

Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 647, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A State court decision involves an unreasonable application of clearly established

Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the state court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Panetti v. Quarterman*, --- U.S. --- 127 S.Ct. 2842, 2858, --- L.Ed.2d — (2007) (holding that when § 2254(d)(1) is satisfied, "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires."); *Jones v. Walker*, 469 F.3d 1216 (11th Cir. 2007). Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified

that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).  If a petitioner satisfies the AEDPA and § 2254(d)(2), the federal court must review the merits of the constitutional claim "without deferring to the state court's finding. . . ."  *Panetti v. Quarterman*, 127 S.Ct. at 2858.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).  *See Miller-El*, 537 U.S. at 340, 123 S.Ct. at 1041 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *see also Jones v. Walker*, 469 F.3d at 1226-27 (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

<u>Exhaustion and Procedural Default</u>

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct'

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)   there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct.

---

. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

## Petitioner's Grounds for Relief

**Ground 1.**  **"Actual innocence - trial counsel failed to rely on the pretrial deposition of Investigator Forte in order to clarify actual amounts of cocaine Petitioner allegedl[y] confessed to purchasing."**

Petitioner asserts that at trial, the State presented several witnesses who testified that they either sold petitioner cocaine, or witnessed him purchase cocaine, on several different occasions; however, none of these witness testified that a single transaction involved 400 grams of cocaine or more.  The State then presented the testimony of Investigator Forte, who testified that petitioner told him he had been selling cocaine for approximately one year, and that he had purchased one kilo (1000 grams) from one individual, and approximately one-half kilo (500 grams) from another.  Petitioner contends this was misleading because it implied that petitioner made two single purchases of these large amounts, when in fact these were aggregate amounts of numerous small transactions which occurred over a period of approximately one year.  Petitioner faults trial counsel for failing to make this clarification through the use of Investigator Forte's pre-trial deposition testimony in which Forte explained that  the 1000 grams and 500 grams represented aggregate amounts of numerous smaller transactions.  According to petitioner, had counsel used Forte's deposition testimony to clarify this fact, he would have been acquitted because an aggregate of cocaine purchases over a period of time is insufficient to convict a defendant under Fla. Stat. §§ 893.135(1)(b)1 and 893.135(5).  (Doc. 9, pp. 4c-4d).

Respondent asserts, and petitioner concedes, that this claim is procedurally defaulted because it was not presented to the state courts, and petitioner would be precluded from now raising it in a second Rule 3.850 motion because such motion would be subject to dismissal as untimely and successive pursuant to Florida Rule of Criminal Procedure 3.850(b) and (f).  (Doc. 9, p. 4b; doc. 33, pp. 9-10; doc. 23, p. 1; doc. 24, p. 3).  The undersigned agrees.  Petitioner has not demonstrated cause to overcome the procedural default.  *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.

Petitioner nonetheless maintains that he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar. As previously explained, to meet the *Schlup* standard petitioner must support his allegations of

constitutional error with <u>new</u> reliable evidence of his innocence that was not presented at trial.  In this case, petitioner proffers no <u>new</u> evidence of his factual innocence. Rather, he relies on the facts contained in Forte's deposition testimony - that the amounts of cocaine charged in the information were based on aggregated amounts, not a single transaction. He argues that although these facts existed at the time of trial, they were not presented at trial; therefore, this evidence is considered "new" under *Schlup*.

Respondent contends that although Forte's deposition testimony was not presented at trial, Forte's and others' trial testimony presented essentially the same facts  - that the amounts which petitioner handled were generally small, but aggregated, exceeded 400 grams.  (Doc. 33, p. 13).

Investigator Forte's trial statement regarding petitioner's confession was as follows:

> Q. [Prosecutor] Could you tell the ladies and gentlemen of the jury what [petitioner] told you?
>
> . . .
>
> A. [Investigator Forte] Basically he told me he had been -- this was January 29th.  He told me he had been selling cocaine for approximately one year, that he originally received the cocaine from Dough Welch or Jonathan Douglas Welch, another co-conspirator in this case.  A short time after that he started dealing with Isaac Kimsey, receiving cocaine from Isaac Kimsey.  I asked him approximately how much cocaine he had received <u>over this period of time</u> from Isaac Kimsey and he advised me of approximately one kilo.  I asked him if he knew that Kimsey fled the area, he said he did.  I asked him was he getting anymore - who was he getting cocaine from after that, he had told me Eric Reese and Jason Smith.  I then asked him the same question, approximately how much cocaine did you receive from Smith and Reese <u>during this time period</u> and he said approximately a half a kilo.
>
> Q.  Now, is -- did he give you a date as to when he began receiving from Reese?
>
> A.  August of '98, that's the same month that Kimsey fled.
>
> . . . .
>
> Q.  Now, did he indicate when he was introduced by Jonathan Douglas Welch to Kimsey?

A.  Yes. . . . February of '98.

. . . .

Q.   Based on your conversation with Mr. Brown, how much cocaine did he admit to receiving from Kimsey and Reese, and/or Smith <u>during the time period of this conspiracy</u>?

A.  1,500 grams.

(*Id.*, pp. 294-96) (emphasis added).  Thus, contrary to petitioner's characterization of Forte's testimony as implying that petitioner made two large purchases - one from each supplier, the trial transcript makes clear that Forte testified that the purchases from each supplier occurred during the course of petitioner's relationship with them, *i.e.*, over a period of time.  That was also the gist of the testimony from one of the suppliers, and others.

At trial, Eric Reese testified that in April of 1997 he was engaged in activity to traffic in cocaine in the Escambia County area.  (Doc. 18, ex. C, p. 109).  In April, he began receiving cocaine from Ihab Sulaiman in Miami, Florida.  He would fly to Miami and get it, or Sulaiman would bring it to him.  (*Id.*, pp. 109-10).  Sometimes, Jason Smith and Michael Olshefskie would go on Reese's behalf.  (*Id.*, pp. 110-11).  Reese and Smith were basically partners in this business; Olshefskie was more like a runner.  Once the cocaine was brought to Pensacola, Reese and Smith would "call[ ] everybody that [they] knew wanted some and s[ell] it to them."  (*Id.*, p. 111).  Reese's biggest distributors of this cocaine were Olshefskie, Chris Kimsey, petitioner, Robert Welch, John Josey, Doug Welch, and others.  Reese first met petitioner in late 1997.  Reese had fronted Chris Kimsey some cocaine. When Reese contacted Kimsey to collect the money for the drugs he had fronted him, Kimsey told Reese that he had fronted the cocaine to petitioner, and that petitioner had not paid him.  Reese told Kimsey that he (Reese) would collect the money from petitioner. (*Id.*, pp. 113-14).  When Reese called petitioner, petitioner told him that he didn't have the money, but that if Reese would front him more cocaine, he would periodically pay Reese back as much as possible.  Reese ultimately began dealing cocaine directly with petitioner:

Q. [Prosecutor] Tell the ladies and gentlemen of the jury how much you began selling to him [petitioner].

A. [Reese] After that, probably four or five ounces of coke a week, and it went up to around a quarter key a week.

Q.  Did you charge him any particular price?

A. $5,500 to $6,500 per quarter.

Q.  Now, when did you first start dealing with him [petitioner] personally and getting him cocaine?

A.  Not a week or so after the incident with Mr. Kimsey.

Q.  And to your knowledge, do you know whether or not he was using that cocaine for himself?

A.  No, he was not.
. . . .

Q.  Did he ever indicate to you that he was distributing the cocaine?

A.  Did he indicate to me he was selling it?

Q.  Yes.

A.  Yes.

Q.  And who was he selling it to?

A.  Roger Morris, Michael Land, my brother William Bennett, Will Hendershott, and several others that I'm not sure of.

Q.  Now, how -- when you would sell the cocaine to Mr. Brown, how long would it take him to get you the money that was owed to you?

A.  Depending upon the time of the day in the week.  If it was closer to the weekend, before Sunday.  If it was during the week, maybe a couple of extra days.

Q.  In the beginning when you first started dealing with him, how much did you front him?

A.  Four or five ounces a week.
. . . .

Q.  How long after you had fronted that cocaine would he then turn around and pay you back?

A.  Three or four days.

Q.  Did the amounts increase over time?

A.  Yes.

Q.  What did they increase to?

A.  Around a quarter key a week.

 . . .

Q.  And how long after you would give him a quarter key a week would he pay you back?

A.  At that time it increased, it would be like two or three days, and then he would want another one.

Q.  Where did these transactions generally take place?

A.  His house, my house, parking lots, stores, anywhere that we felt was safe.

. . . .

Q.  Now, ultimately did you stop dealing with Mr. Sulaiman?

A.  Yes.

Q.  And who did you get your cocaine from at that point?

A.  Maurice Dixon.

Q.  Did you continue to supply the defendant with cocaine?

A.  Yes.

Q.  Over the course of your relationship with Mr. Brown, how much cocaine do you believe you provided to him?

A.  Four to five kilos.

(Ex. C, pp. 115-19).  One kilogram equals one thousand grams.  WEBSTER'S NEW COLLEGIATE DICTIONARY 495 (1981).  On re-direct, Reese was asked the following:

**Q. [Prosecutor] What was the understanding you had with Mr. Brown as to you supplying him with cocaine? . . . What was your understanding once you supplied him with cocaine?**

**A. [Reese] If I fronted it to him, for him to pay for it was my understanding.**

**Q. And did this understanding continue for those seven or eight months that you've described to us?**

**A. Yes.**

**Q. When you would get the cocaine in from Miami and y'all rent motel rooms out, would you contact Mr. Brown?**

**A. Pretty much first things first, yes.**
**. . . .**
**Q. And did this relationship or these activities continue up until your relationship with Mr. Brown ended in August or midsummer of '98 that you've testified before?**

**A. Yes.**

(*Id.*, pp. 143-45). In addition to Mr. Reese, Leslie Bennett Leatherwood testified for the State that she had seen petitioner with a "brick" of cocaine and that he had borrowed a cocaine press, which is used to press cocaine back together after it is cut to increase volume. (*Id.*, pp. 156-58). Michael Olshefskie testified that on 10 or 12 occasions he observed petitioner purchasing cocaine at Kimsey's house, and that each purchase was approximately half an ounce. (*Id.*, p. 180). Charles Gignilliat testified that petitioner was receiving ounces of cocaine from Kimsey two or three times per week in sandwich bags. (*Id.*, pp. 200-06). Gignilliat stated that petitioner purchased cocaine from Kimsey two or three times a week for seven or eight months, and said that he personally saw petitioner purchase a little less than one kilogram of cocaine. (*Id.*, pp. 203-04). Gignilliat testified that petitioner had indicated he was selling the cocaine, but he could not remember the name of petitioner's customers, other than Greg Gazooka. (*Id.*, pp. 204-05).

Based on the foregoing, the undersigned rejects petitioner's contention that the information provided in Forte's deposition testimony (that the 1000 grams and 500 grams represented aggregated amounts of smaller transactions) is "new"

evidence.  (Doc. 23, p. 21 (identifying the "new evidence" as "[t]he portions of Forte's deposition referring to the actual amounts of cocaine Brown purchased. . . .") and p. 26 ("the excluded or 'unrelied upon' portions of Forte's deposition relating to Brown's admission constitute 'new reliable evidence . . . that was not presented at trial,' and . . . this evidence raises 'sufficient doubt about [Brown's] guilt to undermine confidence in the result of the trial.'")).   As the trial transcript demonstrates, those facts <u>were</u> presented at trial through Forte and other witnesses.

Accordingly, petitioner has not made a colorable showing of actual innocence under *Schlup* to excuse his procedural default of Ground 1.  Therefore, this ground of ineffective assistance is procedurally barred from review by this court.

Ground 2.     <u>"Trial counsel failed to: (a) move to dismiss information as it was overly broad and vague or; (b) at a minimum request a statement of particulars as to the offenses charged; and (c) in any event, failed to move for arrest of judgment on the ground that the information was so defective it will not support a judgment of conviction."</u>

Petitioner contends trial counsel was ineffective for failing to attack the sufficiency of the charging information.  (Doc. 9, pp. 4e-4f).  As with Ground 1, respondent asserts, and petitioner concedes, that this claim is procedurally defaulted because it was not presented to the state courts, and petitioner would be precluded from now raising it in a second Rule 3.850 motion.  (Doc. 9, p. 4b; doc. 33, p. 15; doc. 23, p. 1; doc. 24, p. 3); *see* FLA. R. CRIM. P. 3.850(b) and (f).  The undersigned agrees.  As with Ground 1 above, petitioner has made none of the requisite showings to excuse his default.[4]   Therefore, this ground of ineffective assistance is procedurally barred from review by this court.

Ground 3.     <u>"Trial counsel failed to object to use of petitioner's alleged prior confession, where corpus delicti had not been established at the time the confession was admitted."</u>

Petitioner contends trial counsel was ineffective for failing to object to Investigator Forte's testimony concerning petitioner's prior out-of-court statements. (Doc. 9, pp. 4f-4g).  As with Ground 1, respondent asserts, and petitioner concedes,

_____

[4]Petitioner relies on the same "actual innocence" argument presented in Ground 1 to excuse his default of Ground 2.  (Doc. 23, p. 28).

that this claim is procedurally defaulted because it was not presented to the state courts, and petitioner would be precluded from now raising it in a second Rule 3.850 motion. (Doc. 9, p. 4b; doc. 33, p. 20; doc. 23, p. 1; doc. 24, p. 3). The undersigned agrees. Petitioner has made none of the requisite showings to excuse his default.[5] Therefore, this ground of ineffective assistance is procedurally barred from review by this court.

> Ground 4.   **"The prosecutor deliberately misled the jury, and trial counsel failed to object during closing arguments."**

Petitioner contends trial counsel was ineffective for failing to object to the prosecutor's reliance on Investigator Forte's testimony in closing arguments, without clarifying that testimony with Forte's deposition testimony (the testimony discussed in Ground 1, *supra*). (Doc. 9, pp. 4h-4i). As with Ground 1, respondent asserts, and petitioner concedes, that this claim is procedurally defaulted because it was not presented to the state courts, and petitioner would be precluded from now raising it in a second Rule 3.850 motion. (Doc. 9, p. 4b; doc. 33, pp. 22-23; doc. 23, p. 1; doc. 24, p. 3). The undersigned agrees. Petitioner has made none of the requisite showings to excuse his default.[6] Therefore, this ground of ineffective assistance is procedurally barred from review by this court.

> Ground 5.   **"Trial counsel failed to request specific jury instructions, consistent with the charging information, relating to the actual weight of the cocaine."**

Petitioner contends trial counsel was ineffective for failing to request a jury instruction to the effect that in order to find petitioner guilty of trafficking in a "mixture of cocaine containing 400 grams or more, but less than 150 kilograms of cocaine," they were required to find that the amount of cocaine contained in the various mixtures petitioner received from his suppliers and later distributed actually amounted to at least 400 grams. (Doc. 9, pp. 4i-4j). As with Ground 1, respondent asserts, and petitioner concedes, that this claim is procedurally defaulted because

---

[5]Petitioner relies on the same "actual innocence" argument presented in Ground 1 to excuse his default of Ground 3. (Doc. 23, p. 36).

[6]Petitioner relies on the same "actual innocence" argument presented in Ground 1 to excuse his default of Ground 4. (Doc. 23, p. 39).

it was not presented to the state courts, and petitioner would be precluded from now raising it in a second Rule 3.850 motion.  (Doc. 9, p. 4b; doc. 33, pp. 25-26; doc. 23, p. 1; doc. 24, p. 3).  The undersigned agrees.  Petitioner has made none of the requisite showings to excuse his default.[7]  Therefore, this ground of ineffective assistance is procedurally barred from review by this court.

Ground 6.   **"Trial counsel failed to move for judgment of acquittal at the close of the state's case; at the close of all the evidence in the case; and/or within 10 days after reception of the verdict."**

Petitioner's last claim is that counsel was ineffective for failing to move for judgment of acquittal ("JOA").  Specifically, the amended petition faults counsel for failing to move for JOA on the trafficking charge on the grounds that: (1) "there was no cocaine confiscated or presented at trial, and thus no way to determine how much cocaine was contained in any mixture from any transaction testified to at trial," and (2) none of the State's witnesses testified to witnessing or engaging in a single transaction with petitioner involving 400 grams or more of cocaine, and although the State introduced petitioner's statements to police that he had received approximately 1000 grams of cocaine from Kimsey and 500 grams from Reese, such testimony "was taken out of context" and, in any event, could not be the sole basis for conviction under Florida law.  (Doc. 9, pp. 4l-4m).  Petitioner maintains that counsel's error prejudiced him, because the evidence was sufficient only to convict him of the lesser included offense of trafficking in 28 grams or more but less than 200 grams of cocaine, which would have resulted in a shorter sentence.  (*Id.*, pp. 4k-4m).  Petitioner also faults counsel for failing to move for JOA on the conspiracy charge, arguing that the only evidence of an "agreement" or of his "intent" was Eric Reese's testimony, which was sufficient to convict petitioner only of conspiracy to traffic in 28 grams or more but less than 200 grams of cocaine.  (*Id.*, p. 4k).  In his reply, petitioner clarifies that the "crux" of this claim is "whether the state can combine the amounts (weight) from several smaller transactions to create a greater offense and/or penalty."   (Doc. 23, p. 4).   Petitioner further clarifies in his

---

[7]Petitioner relies on the same "actual innocence" argument presented in Ground 1 to excuse his default of Ground 5.  (Doc. 23, p. 46).

supplement, that "[t]he claims within this petition and the reply all rely on the premise that the State may not aggregate amounts of cocaine over a period of time to charge and obtain a conviction for trafficking in or conspiracy to traffic [in] those amounts unless there is a common scheme to purchase, possess, or sell those aggregate amounts."  (Doc. 24, p. 1).

In his amended answer, respondent asserts that the only aspect of this ineffective assistance claim that was presented to the state court was counsel's failure to move for JOA on the trafficking count on the grounds that the evidence was insufficient to establish that the substance was, in fact, cocaine and that it involved 400 grams or more.  (Doc. 33, pp. 27-28).  To the extent petitioner now faults counsel for failing move for JOA on additional grounds, such grounds are procedurally defaulted.  (Id., pp. 28-29 (citing FLA. R. CRIM. P.  3.850(b), (f))).  Those aspects of the IAC-JOA claim that were presented to the state court do not entitle petitioner to federal habeas relief.  (Doc. 33, pp. 34-37).

A.     Exhaustion and Procedural Default

It is beyond dispute that petitioner's Rule 3.850 motion raised the issue of whether trial counsel was ineffective for failing to move for judgment of acquittal on the sufficiency of the evidence.  What this court must determine is whether petitioner gave the state court a full and fair opportunity to evaluate the issue on the same bases as those presented here.

In his Rule 3.850 motion, petitioner claimed counsel was ineffective "for not filing motion for judgment of acquittal (JOA) arguing that, because the state had produced no tangible evidence which tested positive for cocaine, there was insufficient evidence as a matter of law to establish that defendant was guilty of trafficking in cocaine."  (Ex. J, p. 10).  In support, petitioner argued at length that the State had introduced no positive evidence of cocaine to establish his guilt. (Id.).  The Rule 3.850 court appointed counsel and held an evidentiary hearing on this and other issues.  (Ex. O).  The evidence on the JOA issue was as follows:

> Q [by petitioner's Rule 3.850 counsel].  And at the conclusion of the trial you had an opportunity to move for judgment of acquittal based on the, I believe the testimony there was that no drugs were found on Mr. Brown.  No one could show that he had other than the verbal

statements when they searched his home and vehicles, there wasn't any large quantity or no quantity, just the scales as far as the cocaine, did you move for a judgment of acquittal based on the sufficiency of the evidence?

A [petitioner's trial counsel David Sellers].  No, I didn't and looking back on it as to the trafficking charge, I probably should have. On the conspiracy, it was overwhelming evidence.  I think on the trafficking charge there was overwhelming evidence as well.  My thinking at that time was and I know there's some lawyers that move for judgment of acquittal at the close of the State's case and they move for it again at the close of all of the evidence and that's a safe way to make sure that issue is preserved and I used to do that and honestly I don't do it every time if I feel like the evidence is sufficient just because I think it is somewhat of a credibility issue with the Court.  But I think all Courts expect it, so on balance I probably should have but my thinking was on the trafficking charge there was tons of testimony about the quantity of drugs that were delivered to Mr. Brown and that Mr. Brown distributed.

In fact, we specifically, I don't recall if I did this with Jamie [petitioner] in the office but I know me and my paralegal and investigators spent a great deal of time going over all of the testimony because there was so many different people involved to add up the amount to see if it got him to the trafficking amount because that was a big concern.

My way of thinking about it was that at the time they arrested Mr. Brown all they really had was residue on the scales, which he disavowed ownership of but that by that time he had, there was a lot of testimony that everybody kind of knew the bottom was beginning to drop out including from Mr. Brown, I think or that people had been driving by the house or sitting outside and Smith and Reese both testified they knew that it was coming to an end, they were moving every three or four months from Fort Walton to here to another apartment and I felt like the evidence was that he had already disposed of any cocaine that they had distributed because they were cutting back on the distribution of cocaine to the various people because they felt like they were about to be busted.

So, you know, I felt like there was a lot of evidence of that and that that was a reasonable explanation of why they didn't find any drugs on him.  I know in federal court it doesn't matter if they find it on them or not, but in balance looking back on that trafficking charge I probably should have argued a motion for judgment of acquittal.  I still

think it would have been denied but I can see where there's at least an argument there.

(Ex. O, pp. 22-24).[8]

Applying *Strickland*, the state court denied relief as follows:

> The Court held an evidentiary hearing on this claim.  Mr. Sellers testified at the evidentiary hearing that he believed the State presented overwhelming evidence of the Defendant's guilt.  Mr. Sellers also testified that in his professional opinion, the fact that the officers never found cocaine did not cripple the State's case.  Mr. Sellers explained that the State presented "a lot of evidence" about the Defendant's distribution of cocaine prior to the drug bust, which explained the absence of cocaine when the police searched the Defendant's home.  Mr. Sellers testified that at the time, he believed filing a JOA would have been futile.  The State's evidence included testimony by several co-defendants, electronic scales found in the Defendant's home, and the Defendant's admission to receiving one kilo (1000 grams) of cocaine from Isaac Kimsey, a kilo and a half (1500 grams) from Kimsey and Reese and/or Smith, and selling the cocaine.  Accordingly, the Defendant has failed to meet his burden of showing that his counsel's performance was deficient for failing to file a JOA.

(Ex. P, pp. 171, 176-77).

On appeal, petitioner's counsel filed an *Anders*[9] brief.  In discussing each item identified in the Statement Of Judicial Acts To Be Reviewed, counsel identified the JOA issue as counsel's failure to move for judgment of acquittal "on the trafficking charge," "on the grounds the state had adduced no tangible evidence that tested positive for cocaine."  (Ex. Q, pp. 3, 12).  Petitioner filed a *pro se* brief, in which he identified the JOA issue as counsel's failure to move for judgment of acquittal on the ground that "the state had adduced no tangible evidence that tested positive for cocaine," and, therefore, "there was insufficient evidence as a matter of law to establish that Appellant was guilty of trafficking in cocaine."   (Ex. R, pp. 2, 31).  Petitioner maintained that in support of a motion for JOA, counsel should have argued that: "(1) Appellant could not have known the substance was cocaine because there was no cocaine; (2) Appellant could not have knowingly purchased

---

[8]These page numbers are those of the actual transcript, appearing in the upper right-hand corner of the page.

[9]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

or possessed cocaine because there was no cocaine," (*id.*, p. 32), and (3) "the state did not prove that Appellant had the requisite amount of cocaine to support a trafficking conviction. . . . [T]here was never any cocaine entered during the trial, and nothing was ever presented to establish the requisite weight for trafficking cocaine. It may be so, that several co-defendants testified as to alleged weights of cocaine. However, this is not substantial evidence to establish the requisite weight requirements for trafficking cocaine." (*Id.*, pp. 33-34). The appellate court affirmed the denial order without written opinion. (Ex. S).

Based on the foregoing, it appears that the only aspect of the IAC-JOA claim that was presented to, and adjudicated on the merits by, the state court is that counsel was deficient for failing to move for JOA with regard to the trafficking charge on the proffered basis that the State failed to produce sufficient evidence that the substance involved was cocaine, and that the State's testimonial evidence was not substantial evidence of the requisite weight.

To the extent petitioner attempts to expand his claim in this court to argue that counsel should have filed a motion for JOA on the conspiracy charge (*see* doc. 23, p. 15; doc. 24), and that counsel should have filed a motion for JOA on the trafficking charge on the grounds that as a matter of law, the State may not aggregate amounts of cocaine over a period of time to obtain a conviction for trafficking in those amounts (*i.e.*, that there was insufficient evidence that any <u>single</u> transaction involved 400 grams or more of cocaine), those aspects of petitioner's claim were not presented to, or adjudicated by, the state court. Petitioner would be precluded from now raising those grounds in a second Rule 3.850 motion because such motion would be subject to dismissal as untimely and successive pursuant to Rule 3.850(b) and (f). Therefore, these additional grounds are considered procedurally defaulted. Petitioner has made none of the requisite showings to excuse his default.[10]  Thus this court will not review them.

B.      Clearly Established Federal Law

---

[10]Petitioner relies on the same "actual innocence" argument presented in Ground 1 to excuse his default.  (Doc. 37).

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.  *Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for

counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

C.    Federal Review of State Court Decision

As indicated above, in his Rule 3.850 motion petitioner claimed counsel was ineffective "for not filing motion for judgment of acquittal (JOA) arguing that, because the state had produced no tangible evidence which tested positive for cocaine, there was insufficient evidence as a matter of law to establish that defendant was guilty of trafficking in cocaine."  (Ex. J, p. 10).  After an evidentiary hearing, the Rule 3.850 court denied relief, and the First DCA affirmed without written opinion.

In order to find petitioner guilty of trafficking in 400 g. to 150 kg. of cocaine, the State was required to prove beyond a reasonable doubt that: (1) that petitioner knowingly sold, purchased, manufactured, delivered, or possessed a certain substance, (2) the substance was cocaine or a mixture containing cocaine, (3) the quantity of the substance involved was 400 grams or more but less than 150 kilograms, and (4) petitioner knew that the substance was cocaine or a mixture containing cocaine.  (Ex. C, pp. 544-47).

The Rule 3.850 found that counsel failed to move for JOA because he believed such motion would have been futile because the State presented overwhelming evidence that petitioner had distributed a substance that was cocaine or a mixture containing cocaine, and that the testimonial evidence, including petitioner's

confession, was sufficient to prove that the amount exceeded 400 grams. After reviewing the evidence adduced at trial, the state court concluded that counsel acted reasonably, because the evidence was sufficient in both regards, and counsel cannot be deemed deficient for failing to make a meritless motion. Therefore, petitioner failed to establish the first prong of *Strickland*.

The state court's findings are presumed correct. Petitioner has not presented clear and convincing evidence that any finding was incorrect or unreasonable in light of the state court record. Because the facts which the state court confronted are not "materially indistinguishable" from *Strickland* and because the state court decision involved mixed questions of law and fact, petitioner is entitled to habeas relief only if he establishes that the state court's decision was an objectively unreasonable application of *Strickland*. This, he cannot do.

As detailed above, Investigator Forte testified at trial that petitioner confessed to selling cocaine for approximately one year. Petitioner confessed to receiving a total of approximately one kilogram (1,000 grams) of cocaine from Kimsey between February and August of 1998, and a total of approximately one half kilogram (500 grams) of cocaine from Smith and Reese between August 1998 and the time of his arrest. (Ex. C, pp. 294-95). Eric Reese testified that Brown purchased cocaine from him, starting with four to five ounces per week and escalating to a quarter of a kilogram (250 grams) per week. (*Id.*, pp. 114-15). Reese said that Brown was selling this cocaine to Roger Morris, Michael Land, William Bennett, Will Hendershott, and others. (*Id.*, pp. 118-19). Reese estimated that he sold petitioner a total of four to five kilograms (4,000-5,000) grams of cocaine during their relationship. (*Id.*, p. 119). Leslie Bennett Leatherwood, Michael Olshefskie and Charles Gignilliat testified as detailed in Ground 1 above.

In light of the foregoing, it was not objectively unreasonable for the state court to conclude that counsel was not deficient for failing to file a motion for JOA on the trafficking charge (on the grounds that the State failed to produce sufficient evidence that the substance involved was cocaine, and that the State's testimonial evidence was not substantial evidence of the requisite weight), because that motion was without merit and would have been denied. *See Brownlee v. Haley,* 306 F.3d

1043, 1066-67 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion would not have been successful). And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice. Accordingly, petitioner is not entitled to federal habeas relief on Ground 6 of his amended petition.

## CONCLUSION

The vast majority of petitioner's grounds for relief are procedurally defaulted. Petitioner has made none of the requisite showings to excuse his default. The one aspect of petitioner's ineffective assistance claim that was properly exhausted does not warrant federal habeas relief.

Accordingly, it is respectfully RECOMMENDED:

That the amended petition for writ of habeas corpus (doc. 9) challenging the convictions and sentences in *State of Florida v. James Fondren Brown*, in the Circuit Court of Escambia County, Florida, case number 99-383, be DENIED and the clerk be directed to close the file.

At Pensacola, Florida this 26th day of October, 2007.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of

appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).